UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DR. LARRY CUNNINGHAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STEPHANOS KYRKANIDES, *et al.*, )<br>)<br>Defendants. )<br>)<br>)<br>) | Civil No. 3:20-cv-00008-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Stephanos Kyrkanides's Motion for Summary Judgment [R. 67.]  Between January and July of 2019, Dr. Larry Cunningham, an employee of the University of Kentucky College of Dentistry accused of health care fraud, was forbidden from engaging in clinical activities and resigned after the University initiated termination proceedings.  [R. 63-4 at 21, 29.]  In response, Dr. Cunningham filed suit against multiple defendants including Stephanos Kyrkanides, a former Dean of the University of Kentucky College of Dentistry.  [R. 1.]  In his Complaint, Dr. Cunningham accuses Dr. Kyrkanides of First Amendment retaliation, violating his procedural and substantive due process rights, violating Kentucky wage and hour law, and violating Kentucky's Whistleblower Act.  [R. 1-2.]  Dr. Cunningham filed an Amended Complaint on March 23, 2021, adding a claim against Dr. Kyrkanides for defamation [R. 53.]  Dr. Kyrkanides now moves for summary judgment in his favor.  [R. 67.]  For the reasons set forth herein, Dr. Kyrkanides's Motion [R. 67] will be **GRANTED IN PART** and **DENIED IN PART**.

**I**

Dr. Larry Cunningham was employed at the College as an oral surgeon and faculty member from 2001 through July of 2019. [R. 63-4 at 1.] Dr. Stephanos Kyrkanides served as the Dean of the College from 2013 until January 16, 2019. [R. 67-1 at 6, 12.] In 2018, UK Healthcare Corporate Compliance began an investigation of Dr. Cunningham regarding a "documentation concern," which was later concluded without disciplinary action. [R. 63-4 at 12.] On January 17, 2019, the day after Dr. Kyrkanides was removed as Dean, however, Provost Blackwell of the University of Kentucky informed Dr. Cunningham that he was being accused of fraud for "claiming credit for services which he did not perform." *Id.* at 21. Provost Blackwell indicated that he "intended to pursue termination proceedings," and forbade Dr. Cunningham from performing any clinical activities after he decided not to resign. *Id.* at 21. As a result of this action, Dr. Cunningham was not allowed to treat patients in the faculty clinic, perform surgery at UK Chandler Hospital, oversee residents' and interns' patient care, teach clinical courses, or work at the Veterans' Administration Hospital. *See id.* at 23. On May 24, Provost Blackwell issued a Statement of Charges against Dr. Cunningham, formally beginning termination proceedings. *Id.* at 26. On June 7, Dr. Cunningham "tendered his resignation," which was effective on July 7. *Id.* at 29.

On January 1, 2020, Dr. Cunningham filed a Complaint against multiple defendants alleging violations of his procedural and substantive due process rights, defamation, First Amendment retaliation, breach of contract, and violations of Kentucky wage and hour law. [R. 1-2.] Dr. Cunningham accused Dr. Kyrkanides of involvement in his First Amendment retaliation claim, procedural and substantive due process claims, Kentucky wage and hour law claim, Kentucky Whistleblower Act claim, and defamation claim. [*Id.*; R. 53.] This Court dismissed Dr.

Cunningham's Whistleblower Act claim against Dr. Kyrkanides. [R. 9.] Now, Dr. Kyrkanides moves for summary judgment in his favor on the remaining claims and his Motion is ripe for review.

## II

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d

558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

### A

First, the Court turns to Dr. Kyrkanides's argument that summary judgment should be granted in his favor against Dr. Cunningham's procedural due process claim. [R. 67-1 at 28-32.] In his Complaint, Dr. Cunningham alleges that the Defendants, including Dr. Kyrkanides, violated his procedural due process rights by failing to provide him due process prior to revoking his ability to perform clinical duties and his clinical privileges, Dental Service Plan (DSP) income, and employment. [R. 1-2 at 36-38.] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "No State shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The procedural component of the Due Process Clause protects rights created by state law and guarantees that no significant deprivation of life, liberty or property will take place until notice has been provided and the individual has a meaningful opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). In *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989), the United States Supreme Court stated:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 33 L.Ed.2d 548 (1972); the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient, *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871, 74 L. Ed. 2d 675. The types of interests that constitute "liberty" and "property" for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than "an abstract need or desire," *Board of Regents v. Roth*, 408 U.S. at 577, 92 S. Ct. at 2709, and must be based on more than "a unilateral hope," *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460,

>  2464, 69 L.Ed.2d 158 (1981).  Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it.

*Thompson*, 490 U.S. at 460.

By prior Order [R. 118] the Court concluded that Dr. Cunningham held property interests in his clinical duties, clinical privileges, DSP income, and employment. *Id.* at 8-9, 11-12**.**  The Court further ruled that these property interests may have been denied without due process, and neither party was granted summary judgment. *Id.* at 10-13**.**  In the present Motion, Dr. Kyrkanides does not argue that the Court's prior Order is substantively incorrect.  Instead, he argues that, because he was removed from his position as Dean of the College on January 16, 2019, the day before Dr. Cunningham's clinical duties were revoked, he was not involved in any alleged procedural due process violations which occurred on or after January 17.  [*See* R. 67-1 at 28-32.]  Specifically, Dr. Kyrkanides argues that he did not demote Dr. Cunningham, reduce his salary, alter his job duties, take away any of the benefits of his employment, or initiate the investigation into his billing practices. *Id.* at 30.  In response, however, Dr. Cunningham argues that, although Dr. Kyrkanides was demoted prior to the revocation of his clinical duties, Dr. Kyrkanides was still engaged in a civil conspiracy to cause him harm with the remaining defendants in this matter.  [*See* R. 79 at 11 (citing *Hooks v. Hooks*, 771 F.2d 935, 944-45 (6th Cir. 1985).]  Dr. Cunningham further alleges that, regardless of the presence of a civil conspiracy, Dr. Kyrkanides can be held liable under a "cat's paw" theory. *Id.*

Upon review, however, the Court agrees with Dr. Kyrkanides.  First, Plaintiff provides no evidence, aside from his bare assertion, that a civil conspiracy exists.  The Sixth Circuit defines a civil conspiracy as:

>  [A]n agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence

> of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks*, 771 F.2d at 943-44 (citations omitted). "Because direct evidence of conspiracy is rarely available, it is enough to produce circumstantial evidence sufficient to reasonably infer the existence of a conspiracy." *Womack v. Conley*, 595 Fed. App'x 489, 494 (6th Cir. 2014). Although Dr. Cunningham does not explain his position clearly, the Court surmises him to argue that circumstantial evidence exists in this case to infer the existence of a conspiracy between Dr. Kyrkanides and one or more co-defendants to violate his procedural due process rights. In support of this position, Dr. Cunningham points to his contentious history with Dr. Kyrkanides. [*See* R. 79 at 12-14.] Dr. Cunningham also refers to an email that Dr. Kyrkanides sent to himself listing the punishments that he wished Dr. Cunningham to receive for allegedly committing fraud, including that "[Dr. Cunningham's] faculty practice [be] revoked immediately." [R. 79 at 12.]

Dr. Cunningham's evidence, however, does not indicate the presence of a "single plan" between Dr. Kyrkanides and any co-defendant. Although Dr. Kyrkanides expressed his desire for Dr. Cunningham to be punished, the evidence of this desire is located in an email sent to himself. [R. 79-3.] Moreover, Provost Blackwell, who forbade Dr. Cunningham from performing his clinical duties, indicated that it was he and Dr. Holloway who made the revocation decision "in consultation," not he and Dr. Kyrkanides. [R. 67-4 at 349.] Finally, Dr. Blackwell indicated that Dr. Kyrkanides "could not have been viewed as objective," so he intentionally made sure to not include Dr. Kyrkanides in the decision-making process. [*See* R. 62-1 at 116.] Accordingly, because the evidence indicates that the remaining defendants in this

6

matter intentionally excluded Dr. Kyrkanides from the decision to revoke Dr. Cunningham's clinical duties and because Dr. Cunningham has not provided evidence to establish a genuine issue of material fact as to whether a single plan existed between Dr. Kyrkanides and the co-defendants in this matter, Dr. Cunningham's civil conspiracy argument fails.

Dr. Cunningham's theory that Dr. Kyrkanides violated his procedural due process rights by acting as the "cat's paw" also fails. Under the cat's paw theory of liability, one who holds a discriminatory intent and influences an ultimate decisionmaker may be deemed liable for harm caused. *See Bose v. Bea*, 947 F.3d 983, 990-91 (6th Cir. 2020) (quoting *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427 (6th Cir. 2014) ("[u]nder a cat's paw theory, the decisionmaker need not have notice of the subordinate's discriminatory purpose. The cat's paw theory, rather, imputes knowledge and discriminatory intent- the cat's paw is the 'unwitting tool' of those with the retaliatory motive.")). The Sixth Circuit, however, has not expanded the cat's paw theory of liability to Section 1983 claims. *See Bose*, 947 F.3d at 991, n.4. Though Dr. Cunningham alleges, by bare assertion, that the cat's paw theory applies in this case, his argument is without legal support. [R. 79 at 11.] Accordingly, the Court will grant summary judgment in favor of Dr. Kyrkanides.

## B

Dr. Kyrkanides next argues that he should be awarded summary judgment against Dr. Cunningham's substantive due process claim. [R. 67-1 at 28-32.] As with Dr. Cunningham's procedural due process argument, Dr. Kyrkanides contends that he was not involved in violating Dr. Cunningham's substantive due process right to his reputation. *Id.* Although, in response, Dr. Cunningham argues than Dr. Kyrkanides can be deemed liable through his involvement in a civil conspiracy or under the cat's paw theory, he does not explain how Dr. Kyrkanides conspired to

violate his reputation. Moreover, though Dr. Cunningham provides statements made by Dr. Kyrkanides in which he is accused of committing fraud and engaging in illegal activity, he provides no evidence of a single plan to harm his reputation. [*See* R. 79 at 11-14.] Additionally, by prior Order, the Court has ruled that Defendants' accusations of fraud against Dr. Cunningham do not "shock the conscience" as to constitute a substantive due process violation. [R. 118 at 32-33 (citing *Mertik v. Blalock*, 983 F.2d 1353, 1369 (6th Cir. 1993)).] As a result, even if Dr. Cunningham had proven the presence of a civil conspiracy or cited to case law that expands the cat's paw theory to Section 1983 cases, the statements made by Dr. Kyrkanides would still fail to support a constitutional claim. Accordingly, summary judgment in favor of Dr. Kyrkanides is appropriate.

C

Next, Dr. Kyrkanides moves for summary judgment on Dr. Cunningham's First Amendment retaliation claim. [R. 67-1 at 28-32.] To establish a claim of First Amendment retaliation a plaintiff must prove "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [plaintiff's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (en banc)). Additionally, if the plaintiff is a public employee, the Sixth Circuit mandates the application of a two-step analysis to determine whether the action taken against him violates the First Amendment. "First, we must determine whether the employee was speaking as a government employee (rather than in his capacity as a private citizen) and whether the statement constitutes speech on a matter of public concern. If so, we then apply a balancing test to determine whether the interest in protecting speech on issues of

8

public concern outweighs the interest of the government employer 'in promoting the efficiency of the public services it performs through its employees.'" *Ryan v. Blackwell*, 979 F.3d 519, 526 (6th Cir. 2020) (citations omitted). These two steps are required sub-elements of the first element of the First Amendment retaliation framework. *Id.* If that showing is made, the burden shifts to the defendant to show that the same action would have been taken absent plaintiff's exercise of protected conduct. *Id.*

Dr. Cunningham alleges that Dr. Kyrkanides and the other defendants retaliated against him for exercising his First Amendment right by testifying in a prior First Amendment retaliation lawsuit against the University. [R. 1-2 at 33-36.] The alleged retaliatory acts include denial of DSP wages, being forbidden from performing clinical activities, being accused of fraud, ostracization, a hostile work environment, and initiation of termination proceedings. [R. 1-2 at 35.] Again, Dr. Kyrkanides argues that he was not responsible for any of those actions. [R. 67-1 at 30-31.] Dr. Cunningham again raises civil conspiracy and cat's paw theories of liability. [R. 79 at 11-14.]

By prior Order, the Court concluded that Dr. Cunningham's prior testimony was protected conduct. [R. 118 at 23-26.] However, the Court found that there was insufficient evidence to show a causal connection between Dr. Cunningham's deposition and any alleged retaliatory act. *Id.* at 27-28. The Court's analysis focused on the fact that Dr. Cunningham's evidence for this claim primarily consisted of statements by Dr. Kyrkanides to other University officials. *Id.* There was no evidence showing that the alleged retaliatory acts were executed by those University officials *because of* Dr. Kyrkanides's statements. *Id.*

As discussed above, Dr. Cunningham did not provide evidence proving a conspiracy between Dr. Kyrkanides and other University officials. Dr. Cunningham shows evidence of Dr.

9

Kyrkanides's "desires and motivations" to "respond" to Drs. Cunningham and Shehata's alleged impropriety. [R. 79 at 12-13.] However, there is no evidence showing that the other University officials who actually responded to the impropriety conspired with Dr. Kyrkanides. Therefore, there is no evidence to support a conspiracy to retaliate against Dr. Cunningham for exercising his First Amendment right. Dr. Cunningham also raises a "cat's paw" or "influential recommender." As explained above, the Sixth Circuit has not extended this theory to 1983 claims. *See Bose*, 947 F.3d at 991, n.4. Therefore, the Court grants summary judgment in favor of Dr. Kyrkanides on Dr. Cunningham's First Amendment retaliation claim.

### D

The Court next turns to Dr. Kyrkanides's request for summary judgment in his favor against Dr. Cunningham's Kentucky Wage and Hour claim. In Count V of his Complaint, Dr. Cunningham alleges that Defendants, including Dr. Kyrkanides, deprived him of his wages in violation of KRS Chapter 337. [R. 1-2 at 41-43.] Specifically, Dr. Cunningham alleges that Defendants withheld wages he earned from treating patients and that Defendants prevented him from earning additional income by revoking his clinical duties. *Id.* By previous Order [R. 118 at 19-21], the Court concluded that Dr. Cunningham was not entitled to additional wages he had not "earned" under KRS Chapter 337. Accordingly, to the extent Dr. Cunningham seeks wages from income he did not earn, even it by fault of the Defendants, Dr. Kyrkanides is entitled to summary judgment. However, the Court also concluded that there exists a genuine issue of material fact as to whether Dr. Cunningham is entitled to wages he earned for work performed before Dr. Kyrkanides was demoted from his position of Dean. *Id.* at 20-21 (citing *Kimmel v. Progress Paint Mfg. Co.*, 2003 Ky. App. Unpub. LEXIS 1, *9 (Ky. Ct. App. January 10, 2003) (holding that wages are not owed under KRS 337.060 if there exists a bona fide dispute as to

whether the wages were "agreed upon."). Because it is more appropriate for a jury to determine whether a bona fide dispute exists as to whether Dr. Cunningham is owed wages under KRS 337, however, the Court declines to grant summary judgment in favor of either party. Moreover, though Dr. Kyrkanides briefly asserts that Kentucky qualified immunity law shields him from liability, this argument is not briefed thoroughly and does not allow the Court to analyze its applicability. [*See* R. 67-1 at 34; *see also Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("[i]ssues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.")]. Accordingly, the Court declines to grant summary judgment on qualified immunity grounds.

### E

Finally, Dr. Kyrkanides seeks summary judgment against Dr. Cunningham's defamation claim. [R. 67-1 at 34-38.] By interrogatory, Dr. Cunningham lists eleven communications made by Dr. Kyrkanides that he claims to be defamatory. [R. 67-4 at 429-36.] In response, Dr. Kyrkanides argues that Dr. Cunningham's defamation claim is barred by the statute of limitations and, alternatively, that he is protected by a qualified privilege. [R. 67-1 at 34-38.]

The Court first turns to Dr. Kyrkanides's statute of limitations argument. Defamation claims in Kentucky are governed by a one-year statute of limitations. Ky. Rev. Stat. Ann. § 413.140(1)(d). The cause of action accrues when the allegedly slanderous or defamatory statement is published or made. *See Caslin v. Gen. Elec. Co.*, 608 S.W.2d 69, 70 (Ky. Ct. App. 1980)). "The notion of 'publication' is a term of art, and defamatory language is 'published' when it is intentionally or negligently communicated to someone other than the party defamed." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004). Here, the first allegedly defamatory statement was made on June 14, 2018, and the final statement was made on October

11

4, 2019. [R. 77-5 at 445-451.] Dr. Cunningham filed his original Complaint on January 1, 2020 and did not include a defamation claim against Dr. Kyrkanides. [R. 1-2.] Dr. Cunningham amended his Complaint on March 23, 2021, however, to include a claim of defamation against Dr. Kyrkanides. [R. 53.] Accordingly, any statement made before January 1, 2019 is time barred and cannot be used to support a claim of defamation. Thus, communications one through ten are time barred from use. The final communication made by Dr. Kyrkanides, dated October 4, 2019, however, survives under the doctrine of relation back. Though Dr. Cunningham's Amended Complaint in this matter was filed beyond the running of the statute of limitations for that statement, his original Complaint was filed prior to its expiration. *Hall v. Spencer County, Kentucky*, 583 F.3d 930, 934 (6th Cir. 2009) (citing first *Miller v. American Heavy Lift Shopping*, 231 F.3d 242, 248 (6th Cir. 2000) and then Fed. R. Civ. P. 15(c)) ("[i]n short, 'a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence'); *see also Lynn v. Allstate Prop. & Cas. Co.*, 2010 U.S. Dist. LEXIS 163740 at *6 (E.D. Tenn. July 15, 2010) (holding that a Plaintiff's newly added claim related back to the date of the filing of his original Complaint).

Because one allegedly defamatory statement remains, the Court next analyzes whether Dr. Kyrkanides is shielded from liability by a qualified privilege. In Kentucky, a qualified or conditional privilege attaches to communications "made in good faith, without actual malice, by one who believes he has a duty or an interest to a person with a corresponding duty or interest." *Brewer American Nat. Ins. Co.*, 636 F.2d 150, 154 (6th Cir. 1980). Kentucky case law "has routinely applied this common-interest application of a qualified privilege to the employment context." *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 283 (Ky. 2014) (internal quotations omitted). Qualified privileges, however, "must be exercised in a reasonable manner and for a

proper purpose. The immunity is forfeited if the defendant steps outside the scope of the privilege or abuses the occasion." *Stringer*, 151 S.W.3d at 797. Abuse of the qualified privilege can occur by:

> (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of the defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privilege.

*Toler*, 458 S.W.3d at 284.

In his October 4, 2019 communication to the President of the University of Kentucky, Eli Capiluto, Dr. Kyrkanides allegedly asserted that "people go to jail" for altering documents in the manner Dr. Cunningham did and characterized Dr. Cunningham's actions as "illegal activity." [R. 67-4 at 436.] Dr. Kyrkanides argued that his statement was made in the employment context because he was reporting "potential[] illegal activity by faculty members under his supervision" up the "chain of command." [R. 67-1 at 36-37.] Although Dr. Cunningham does not dispute that Dr. Kyrkanides's communication was made in the employment context and is therefore covered under the qualified privilege, he argues that Dr. Kyrkanides exhibited actual malice and "an obsession for punishing Dr. Cunningham." [R. 79 at 16.]

Upon review, the Court agrees with Dr. Cunningham that a genuine issue of material fact exists as to whether Dr. Kyrkanides communicated his statement to President Capiluto because it is unclear whether Dr. Kyrkanides published his statement for a proper purpose. Although Dr. Kyrkanides likely had a duty to report fraudulent activity by a subordinate to those superior to him, evidence in this matter suggests that Dr. Kyrkanides was "obsessed" with ensuring that Dr. Cunningham was punished. For example, Provost Blackwell testified that he intentionally excluded Dr. Kyrkanides from discussions regarding the punishment of Drs. Cunningham and Shehata because he could not be objective and was "obsessed." [*See* R. 62-1 at 110, 116.]

13

Accordingly, it is more appropriate for a jury to determine whether Dr. Kyrkanides's communication exceeds to boundaries of the qualified privilege. The Court therefore declines to grant summary judgment in Dr. Kyrkanides's favor.

### III

So, where do those rulings leave Dr. Cunningham's claims against Dr. Kyrkanides? Only two claims remain. First, Dr. Cunningham's wage and hour claim against Dr. Kyrkanides remains, but only for performed work. Summary judgment is granted to Dr. Kyrkanides for the claim based on unperformed work. Second, Dr. Cunningham's defamation claim remains *only* for communication eleven, the only statement inside of the statute of limitations. Otherwise, summary judgment was granted to Dr. Kyrkanides. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Dr. Kyrkanides's Motion for Summary Judgment [R. 67] is **GRANTED IN PART** and **DENIED IN PART**;

2. Summary judgment is **GRANTED** to Dr. Kyrkanides for **Counts I, II, and III**. Summary judgment is **GRANTED** to Dr. Kyrkanides for the subpart of **Count V** claiming a Wage and Hour violation for unperformed work. Summary judgment is **GRANTED** to Dr. Kyrkanides for the subparts of **Count IX** alleging defamation for communications one through ten.

3. The Court **DENIES** summary judgment as to the subpart of **Count V** claiming a Wage and Hour violation for performed work. The Court **DENIES** summary judgment for the subpart of **Count IX** alleging defamation for Dr. Kyrkanides's October 4, 2019 communication.

This the 21st day of October, 2021.

Gregory F. Van Tatenhove
United States District Judge