UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DR. LARRY CUNNINGHAM,<br><br>Plaintiff,<br><br>v.<br><br>DAVID W. BLACKWELL, *et al.*,<br><br>Defendants. | Civil No. 3:20-cv-00008-GFVT-EBA<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Dr. David W. Blackell's Motion to Reconsider Summary Judgment. [R. 138.] Dr. Larry Cunningham sued Dr. Blackwell for defamation after his employment with the University of Kentucky College of Dentistry ended amid an investigation into altered patient records. [R. 1-2 at 46.] Kentucky law permits individuals to make defamatory, or false, statements in certain socially beneficial contexts. *Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). Once a defendant invokes this privilege, the plaintiff must show that the defendant abused the law's protection, for example by showing that he knew the statement was false. *Id.* at 284. But evidence that a statement might be wrong cannot prove its speaker knew that he was lying. *Id.* at 287. The Court denied Dr. Blackwell's Motion for Summary Judgment on Dr. Cunningham's defamation claim because it is unclear whether Dr. Cunningham "stole from the University" and "falsified medical records," as Dr. Blackwell alleged. Because the Court gave no other reason to suggest that Dr. Blackwell knew the statements were false, his Motion for Reconsideration **[R. 138]** is **GRANTED**.

# I

The University of Kentucky employed Dr. Larry Cunningham as both a medical doctor and a licensed oral surgeon from 2001 through July of 2019. [R. 63-4.] Dr. Cunningham treated patients at UK's faculty clinic. [R. 63-4 at 4.] If Dr. Cunningham was a patient's "Treating Provider," he received forty percent of the bill. *Id.* When Dr. Cunningham and a resident both treated a patient, Dr. Cunningham believed that UK policy entitled him to be the Treating Provider.[1] *Id.* at 5. After he noticed that he was not being paid for some of these patients, Dr. Cunningham altered some of his patients' records to remove references to services provided by the residents. *Id.* at 8–10.

This practice triggered an investigation within the University. *Id.* at 10. At the time, Dr. Blackwell served as UK's Provost. [R. 92 at 14.] During the investigation, Dr. Blackwell allegedly stated that Dr. Cunningham falsified claims to federal health care programs, that Dr. Cunningham violated UK policy to divert funds to himself, that Dr. Cunningham directed a subordinate to do the same, and that Dr. Cunningham forbade the subordinate from disclosing these actions. [R. 1-2 at 46–47.] The parties have disputed, and continue to dispute, whether these allegations were true. [R. 95 at 4 (Dr. Cunningham's evidence that he was the Treatment Provider); R. 142 at 3–4 (UK's argument that Dr. Cunningham's behavior was "wrongful").]

Eventually, UK suspended Dr. Cunningham from treating patients at the faculty clinic. [R. 63-4 at 21.] Shortly after UK began the termination process, Dr. Cunningham resigned. *Id.* at 29. Dr. Cunningham sued the University and several officials for violations of due process, First Amendment retaliation, defamation, breach of contract, violations of Kentucky's Whistleblower Act, and violations of Kentucky's wage and hour law. [R. 1-2.]

---

[1] The substance of the UK policy in place at the time remains a disputed issue. [*See* R. 118 at 21 n.14.]

Dr. Blackwell moved for summary judgment on the defamation claim, invoking a defense referred to as qualified privilege. [R. 92 at 44.] The Court denied his motion, holding that a genuine issue of material fact existed as to whether Dr. Blackwell's allegations were true. [R. 118 at 35.] Now, Dr. Blackwell asks the Court to reconsider that decision. [R. 138.]

## II

A federal district court has the authority to reconsider interlocutory orders under both the common law and Federal Rule of Civil Procedure 54(b). *Rodriguez v. Tenn. Laborer's Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Traditionally, courts only reconsider interlocutory orders "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice."[2] *Id.* A motion to reconsider an interlocutory order is not an invitation for the parties to relitigate the issue. *See Hazard Coal Corp. v. Am. Res. Corp.*, Civil No. 6:20-cv-00010-CHB, 2022 U.S. Dist. LEXIS 238150, at *15 (E.D. Ky. Sep. 9, 2022). These motions do not permit parties to raise arguments or to present evidence that was available to them at the time of summary judgment. *Energy Ala. v. TVA*, No. 2:20-cv-02615, 2022 U.S. Dist. LEXIS 184826, at *4 (W.D. Tenn. July 14, 2022).

Dr. Blackwell suggests that the Court committed clear error by applying the wrong legal standard during summary judgment. [R. 138 at 3.] The Court denied summary judgment because there is a genuine dispute as to whether Dr. Blackwell's statements were false. [R. 118 at 35.] Dr. Blackwell argues that the Court could not deny his motion for summary judgment

---

[2] That said, district courts have the power to revisit their interlocutory summary judgment decisions "for any reason." *ACLU of Ky. v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010); *see also Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 21-3090, 2021 U.S. App. LEXIS 34511, at *15–17 (6th Cir. Nov. 19, 2021) (discussing the *Rodriguez* factors but noting that, under *ACLU of Kentucky*, district courts have authority to reconsider summary judgment for reasons outside those factors).

unless Dr. Cunningham presented evidence that Dr. Blackwell knew the statements were false. [R. 138 at 3.] The Court will first consider whether this distinction amounts to clear error and then consider a path to move forward.

### A

The Court committed clear error by denying Dr. Blackwell summary judgment only based on the potential falsehood of his statements. Under Kentucky law, the elements of a defamation claim are:

> (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting Restatement (Second) of Torts § 558 (1977)). Generally, a statement is actionable per se if it involves false allegations of unfitness to perform a job. *Id.* An exception to this per se rule exists if the societal interest in the unrestricted flow of information is greater than the private interest in redressing reputational harm. *Id.*

This qualified privilege protects the speaker "where the communication is one in which the party has an interest and it is made to another having a corresponding interest." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). In the employment context, it applies to internal discussions and communications that are necessary to a company's proper function and the enforcement of the law. *Dossett v. N.Y. Mining & Mfg. Co.*, 451 S.W.2d 843, 846 (Ky. 1970). There, the public interest in detecting wrongdoing outweighs the private interest in an action for defamation if the suspicions are alleged in good faith. *See id.* Accordingly, the privilege "will provide protection despite a statement's falsity . . . ." *Toler*, 458 S.W.3d at 284.

To protect this socially valuable speech, Kentucky law places the burden on the plaintiff to defeat an assertion of qualified privilege. *Id.* The party bearing the privilege cannot abuse it. *Id.* at 283. A plaintiff can overcome the privilege by showing "both actual malice and falsity . . . ." *Id.* A showing of actual malice depends "not so much [on] *what* was said as . . . *how* it was said." *Id.* at 284. So, a plaintiff can defeat the privilege by showing:

> (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

*Id.* (quoting Restatement (Second) of Torts § 596 cmt. a (1977)).

Kentucky law interprets the malice requirement as distinct from the falsity requirement. *See id.* at 287 ("both malice *and* falsity must be shown for a plaintiff to overcome the qualified privilege."). Accordingly, a plaintiff cannot defeat a motion for summary judgment by merely alleging that a statement is false. *See id.* at 286 (applying this rule to a motion for directed verdict); *see also Harstad v. Whiteman*, 338 S.W.3d 804, 813 (Ky. Ct. App. 2011) (applying to summary judgment). Otherwise, the qualified privilege would not protect false statements uttered within its scope, meaning those that are wrong but offered in good faith. *Toler*, 458 S.W.3d at 287. At bottom, "the mere allegation of falsity" does not "permit an inference of malice." *Id.*

The Court made that inference. In its summary judgment order, the Court concluded that a genuine issue of material fact existed as to whether Dr. Blackwell abused the privilege. [R. 118 at 35.] To get there, the Court reasoned that the record was unclear whether Dr. Cunningham's alterations of his patients' records rose to the level of Dr. Blackwell's accusations. *See id.* (considering the statements that "Dr. Cunningham stole from the University" and "falsified

5

medical records"). "Because the qualified privilege requires 'knowledge or reckless disregard as to the *falsity* of the defamatory matter,'" the Court found that it could not issue summary judgment. *Id.* Apparently, the Court considered the actual falsity of the statements to be a predicate issue to whether Dr. Blackwell knew the statements to be false.

Accordingly, the Court impermissibly used the potential errors in Dr. Blackwell's statements to infer potential malice. *See Toler*, 458 S.W.3d at 287. The qualified privilege, where applicable, is designed to protect an erroneous belief uttered in good faith. *See id.* at 286. So, some statements can be both false and privileged. *Id.* For this reason, Kentucky law does not allow an allegation of falsity to overcome a motion for summary judgment that asserts the qualified privilege, and the Court committed clear error. *Id.*

B

So, how can this litigation move forward? There are four ways that a plaintiff can show that a defendant abused the qualified privilege. *Toler*, 458 S.W.3d at 284. Prior to summary judgment, Dr. Cunningham relied on the first method only. [*See* R. 95 at 37–38.] He argued that Dr. Blackwell knew that the statements at issue were false. *Id.* Now, Dr. Cunningham reasserts this argument and adds one based on the second method, improper purpose. [R. 141 at 6–8.]

Dr. Cunningham cannot assert a new theory to overcome the privilege at this stage of litigation. Motions to reconsider interlocutory decisions do not permit the parties to raise arguments or to present evidence that was available to them at the time of summary judgment. *Energy Ala. v. TVA*, No. 2:20-cv-02615, 2022 U.S. Dist. LEXIS 184826, at *4 (W.D. Tenn. July 14, 2022). Dr. Cunningham asserts that Dr. Blackwell knew that the Dean of the College of Dentistry, Dr. Kyrkanides, nursed an obsession with punishing Dr. Cunningham. [R. 141 at 7–8.] Dr. Cunningham has elsewhere claimed that this improper, obsession-driven purpose vitiates Dr.

6

Kyrkanies's attempt to assert the qualified privilege against his defamation claim. [79 at 16.] Dr. Cunningham now seeks to impute that purpose to Dr. Blackwell. [R. 141 at 7–8.] Because he had access to this argument and any potential evidence in support of it prior to summary judgment, the Court will not entertain it in response to a motion to reconsider. *See Energy Ala.*, 2022 U.S. Dist. LEXIS 184826, at *4.

On the other hand, Dr. Cunningham's argument on the knowledge prong is preserved. [*See* R. 95 at 37–38.] To show abuse of the privilege under this method, Dr. Cunningham must show that Dr. Blackwell either knew or recklessly disregarded the possibility that the statements at issue were false. *Toler*, 458 S.W.3d at 284. The parties have briefed this matter somewhat. [*See* R. 141 at 6–7; R. 142 at 3–4.] But the majority of their briefing on the motion to reconsider focused elsewhere. At this point, the Court's attention is squarely focused on whether Dr. Blackwell knew or recklessly disregarded the possibility that his statements were false. Given the myopic focus of this defamation claim moving forward, the Court will permit the parties additional briefing on this issue only.

### III

Accordingly, for these reasons and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant David Blackwell's Motion to Reconsider **[R. 138]** is **GRANTED**;
2. The parties may file supplemental briefing in this matter *limited only* to the issue of whether Dr. Blackwell knew or recklessly disregarded the possibility that his allegedly defamatory statements were false;

3. As the party bearing the burden to overcome the qualified privilege, Plaintiff Dr. Larry Cunningham **SHALL** file any supplemental briefing no later than 21 days after the entry of this Order;

4. Dr. Blackwell **SHALL** respond no later than 21 days after service of Dr. Cunningham's brief;

5. No further briefing on this issue shall be permitted; and

6. Any briefing submitted **SHALL** comply with the requirements of Local Rule 7.1.

This the 9th day of May 2023.

Gregory F. Van Tatenhove
United States District Judge